## In re SMITH'S ESTATE.
## SMITH v. SMITH.

No. 14712—Opinion Filed Dec. 30, 1924.

1. **Wills—Rights of Son Discriminated Against in Will—Fraudulent Misrepresentation by Principal Beneficiary.**

Where a party is the sole beneficiary of the estate of the decedent except $10 which is left to a son who had not seen his father since he was three years old, and the son was entirely unfamiliar with his father's estate and knew nothing except what was told him by the beneficiary of his father's will, such party must be fair in all of his dealings with the son, and must make full disclosure of all matters relating to the estate; and while a party may keep silent and violate no rule of law or equity, yet if he volunteers to speak and to convey information which may influence the conduct of the other party. he is bound to discover the whole truth. A partial statement then becomes a fraudulent concealment, and even amounts to a false and fraudulent misrepresentation.

2. **Same—Right to Contest Will After Execution of Waiver.**

Where a party is induced by the representations of the beneficiary under a will to execute a waiver or release of his interests in his father's estate for an inadequate consideration after the beneficiary under the will has advised him as to the condition of his father's estate and misled him as to its value to induce him to make said waiver or release, the party making same is not precluded thereby from contesting the will upon discovery of all the facts concerning his father's estate.

3. **Wills — Contest — Appeal — Conclusiveness of Findings.**

A suit contesting a will is essentially an equity action, and the court is the trier of the facts, as well as the law of the case. and where the court's findings of fact and conclusions of law are fair and reasonably sustained by the evidence in the case, this court will not disturb such findings of fact on appeal.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pittsburg County; George T. Arnett, Assigned Judge.

Action by Luther Smith against W. D. Smith contesting the will of Green F. Smith, deceased. There was judgment for the contestant, and the proponent brings error. Affirmed.

Turner, Turner, Harley & Parris and Kent V. Gay, for plaintiff in error.

E. C. Marianelli and John T. Cooper, for defendant in error.

Opinion by MAXEY, C. This is an action contesting the will of Green F. Smith by Luther Smith, a son of decedent. The record shows that the purported will was executed on the 6th day of July, 1922. The will is in the usual form; the first paragraph providing for the payment of all debts and funeral expenses. The second is:

"I give and devise to my son. Luther Smith, who when last heard of some four years ago, was a resident of the town of Charleston, in the state of Arkansas, the sum of ten ($10.00) dollars."

The third is:

"I give and bequeath to all the rest, residue and remainder of my estate. both real and personal, including the proceeds of any life insurance policy which may be in force

and effect at the time of my death, to my nephew, W. D. Smith."

The fourth is:

"I hereby appoint and designate my nephew, W. D. Smith, sole executor without bond, of this my last will and testament."

The record shows that Green F. Smith and his wife, the mother of Luther Smith, separated when Luther was about three years old, and the mother and the child went to Arkansas, and Green F. Smith never saw the child, Luther, again during his lifetime. It further appears that Green F. Smith resided in the home of W. D. Smith for the last year and a half of his life, and that the matter of making a will was talked over frequently between him and W. D. Smith, and that W. D. Smith was quite active in getting the will made. It seems that there were two or three drafts made before they finally got one to suit them. W. D. Smith was entirely familiar with Green F. Smith's property and financial affairs, but Luther knew nothing of his father's affairs at the time he came to Oklahoma to look into the matter, except what W. D. told him, and he relied entirely on what W. D. told him in regard to his father's estate.

This will purports to have been witnessed by P. A. Masterson and Fanny Smith. The will was filed for probate and notice given, and Luther Smith, the son of decedent, who lived in Arkansas, came to McAlester and saw W. D. Smith, the executor, and the will was talked over and Luther Smith said, so far as he could see from the reading of said will and from what he could learn about it, he supposed it to be a valid will, but told W. D. Smith that he thought he got very little from his father's estate and thought he ought to have more; that W. D. Smith offered to pay him $500 for a release of all claims to the estate of Green F. Smith, deceased, and that said Luther Smith executed a waiver of all claims, and said waiver is in the following language:

"Comes now Luther Smith and represents and states to the court that he is a resident of the state of Arkansas, and is the sole surviving child of Green F. Smith, deceased; that the last will and testament of said Green F. Smith, deceased, was duly probated by this honorable court on or about the 29th day of August, 1922.

"That he is advised that under the laws of the state of Oklahoma he has one year within which to contest the probate of said will; that he agreed with W. D. Smith, as the executor of the estate of Green F. Smith, deceased, and for himself, to waive any and all rights, claims, demands and time within which to contest said will for and in con-

sideration of the sum of $500, and that he executes this instrument as such waiver, the same to be effective upon the payment to him of the sum of $500."

This waiver was attached to the answer of W. D. Smith. The petition of the contestant sets out the matter upon which he contests said will in paragraphs 5 and 6 of his petition. He then alleges that Green F. Smith left property as follows: Proceeds of life insurance policy, $5,000; personal property, $1,200; total, $6,200. The petitioner also attached to his petition an affidavit of P. A. Masterson, one of the witnesses whose name appears to said will, in which Masterson denies that he ever signed said will as a witness, but did sign on the 12th day of August, 1922, several days after the death of said Green F. Smith, some papers that W. D. Smith presented to him and told him that it was for proof so that he could get the insurance money, and that is the only paper he ever signed, and that was several days after the death of Green F. Smith. It seems that this supposed proof of death that Masterson signed was the purported will. Masterson states in his testimony that neither Green F. Smith's name nor Fanny Smith's name was on the paper that he signed. This is all denied by W. D. Smith, and he contends that Masterson signed the will at the time it shows it was executed, and that he saw Green F. Smith sign the will and he and Fanny Smith executed it as witnesses. There is a great deal of testimony in the record, but, to say the least of it, there is a very sharp conflict in the testimony as to just how and when the purported will was executed. The proponent introduced a large number of witnesses that testified on various phases of the case, and the contestant also introduced a large number of witnesses who testified in his behalf, and the trial judge after hearing all of the testimony of the witnesses and the argument of counsel followed the county judge of Pittsburg county and denied the will probate. After unsuccessful motion for new trial, the proponent has duly appealed the case to this court by case-made, with petition in error attached.

There was no one present at the time of the alleged execution of the will except the testator, W. D. Smith, the beneficiary, and two witnesses whose names appear to the will; and, as before stated, there is a sharp conflict in the testimony as to whether Masterson was present at the time the will was executed. W. D. Smith is positive in his testimony that he was present. The other witness, Fanny Smith, does not seem to be positive about anything that occurred. She

seemed to be in a mental strain which she explains that she had had some difficulty with her uncle, the decedent, on a former occasion, and that he got very mad at her at that time, and that she just did what they told her to do in regard to witnessing the will, and that her mind was wandering, as she described it, her mind was floating, and her testimony is very vague as to what occurred at the alleged execution of the will. Masterson was just as positive that he did not sign his name to what purported to be a will. At least, he did not know that he was signing his name to a purported will, but understood from W. D. Smith that he was signing a proof of death in order to get the life insurance. There was testimony to the effect that Masterson had been convicted of larceny some years before and served something like six months in prison. Outside of this one incident, he appears to have borne a very good character and was a good citizen. The trial court, both the county judge and the district judge, on appeal, heard all of this testimony and arrived at the conclusion that the will should not be admitted to probate as the last will and testament of Green F. Smith. We think that their findings and conclusions are amply sustained by the testimony. It appears that at the time the will was first admitted to probate Masterson testified that he was present at the execution of the will and signed as a witness at the request of the testator, but on the trial of contest of the will, both in the county court and the district court, on appeal, he testified that he was not present at the signing of any will and never signed anything except what he understood to be proof of death so that the insurance might be collected. Counsel for plaintiff in error refers to him as an admitted perjurer, and that his testimony should not be entitled to any weight, and refers to the fact that Masterson testified as to the regularity of said will at the time the same was admitted to probate and upon the contest reverses his testimony completely and admits he committed perjury in the first instance upon every matter, and for that reason he is totally unworthy of belief, and that his testimony should be entirely ignored. If his testimony should be entirely ignored, his testimony on the probate of the will should be entirely ignored, and this would leave the will insufficiently proven. Much reliance, by the plaintiff in error, is based on the alleged waiver executed by Luther Smith, and they cite a great many authorities as to the effect of such waiver, but these cases are all based on a certain state of facts, and the rules laid down in these cases are based on the facts in each particular case. Counsel cite, with approval, one case in which the writer of this opinion was counsel, viz., Gidney v. Chappell, reported in 26 Okla. 737, 110 Pac. 1100. This case, like the case at bar, had a settlement between Gidney and Chappell, by which Chappell accepted a certain amount of money and some small articles of personal property and released his claim against his mother's estate. Sometime after this settlement was made, Chappell found out what purported to be the true condition, under which his mother executed the will and made Gidney the principal beneficiary, and learned that she was of unsound mind incapable of making a valid will and commenced proceedings to contest the will. This waiver of settlement made between Gidney and Chappell was pleaded by Gidney as a defense, and this court in the case of Gidney v. Chappell, supra, in on opinion by Justice Kane, laid down the following rule in the syllabus:

"In a suit in equity by the sole heir of a deceased person to set aside a conveyance, acquittance, and receipt preliminary to the contest of a will bequeathing the property conveyed to a stranger upon the grounds of want of testamentary capacity on the part of the testatrix and that said will was procured by fraud and undue influence, when it is alleged in the bill that the fraud and undue influence practiced in procuring the will is a link in the chain of fraud whereby the defendant obtained the conveyance, etc., the facts in relation to the execution of the will are material as a matter of evidence.

"If a party originally possessing a remedial right has obtained full knowledge of all the material facts involved in the transaction, and has become fully aware of its imperfections and of his own rights to impeach it, or ought, and might, with reasonable diligence, have become so aware, and all undue influence is wholly removed so that he can give a perfectly free consent, and he acts deliberately, and with the intention of ratifying the voidable transaction, then his confirmation is binding, and his remedial right, defensive or affirmative, is destroyed. If, on the other hand, the original undue influence still remains, or if the act is simply a continuation of the former transaction, or if the party wrongly supposes that the original contract or transaction is binding, or if he has not full knowledge of all the material facts and of his own rights, no act of confirmation, however formal, is effectual. The voidable nature of the transaction is unaltered.

"Although a party may keep absolute silence and violate no rule of law or equity, yet, if he volunteers to speak and to convey information which may influence the con-

duct of the other party, he is bound to discover the whole truth. A partial statement, then, becomes a fraudulent concealment, and even amounts to a false and fraudulent misrepresentation."

This case was again before this court in the case of Gidney v. Chappell, 43 Okla. 267, 142 Pac. 755, where this court held that its former decision in this case on the former appeal was the law of the case and could not be questioned on a second appeal. The case was then appealed to the Supreme Court of the United States and reported in 241 U. S. 99, where the judgment of this court was affirmed. The facts in the two cases, that is, this case and the Gidney Case, are so similar that we think the rule has been settled in this jurisdiction.

The other points relied on by plaintiff in error are questions bearing on the facts in the case as shown by the testimony, and under our view of the law, we think that in an equity case, and this is an equity case purely, where the judge trying the case is trier of the facts as well as the law, and he finds the facts and his findings of fact are fairly sustained by the evidence, this court will not disturb his findings and conclusions.

The record shows that W. D. Smith actually paid the proponent, Luther Smith, $500 for the waiver appearing in the record, and in his settlement with the proponent the said W. D. Smith should be credited with this amount. The judgment of the trial court is correct and should, in all things, be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 26 C. J. pp. 1074, 1075; (2) 40 Cyc. p. 1244; (3) 40 Cyc. p. 1253, 4 C. J. pp. 897, 898.